**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ALAIN FRETAS, et al.,** ) | **CASE NO. 1:06CV1475** |
| ) | |
| Plaintiffs, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **MARK HANSEN, etc., et al.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Defendants' Motion (ECF DKT #9) to Dismiss or, in the Alternative, Motion for Summary Judgment. Also, Plaintiffs have filed a Motion for Leave to File First Amended Complaint. (ECF DKT #12). For the following reasons, the motion to amend is denied and the case is dismissed.

**I. FACTUAL BACKGROUND**

On September 25, 1969, Plaintiff, Alain Fretas ("Fretas"), a Moroccan native, entered the United States. In 1999, he married Leda Katz, an American citizen; and they have one child.

On November 13, 1986, Fretas was convicted in Franklin County Common Pleas Court for the offense of Receiving Stolen Property, a felony of the fourth degree. In the same court, on November 20, 1990, Fretas was convicted of Attempted Drug Abuse, a first-degree misdemeanor. Again, in the same court, on January 2, 1992, Fretas was convicted of Attempted Aggravated Trafficking in Cocaine, a felony of the fourth degree. Each time, incarceration was suspended and Fretas was placed on probation.

On November 30, 1998, Fretas filed a Form N-400, application for naturalization. He

was interviewed by the Immigration and Naturalization Service ("INS")[1] on April 5, 2000. Then, on November 30, 2001, the INS issued a Notice to Appear, requiring Fretas to appear before an Immigration Judge ("IJ") to explain why he should not be deported from the United States. On the same date, his application for naturalization was denied because he was in removal proceedings.

On January 31, 2003, the Franklin County Common Pleas Court granted Fretas' request for post-conviction relief and vacated his guilty pleas in the 1990 and 1992 drug convictions, because his counsel failed to advise him of the deportation consequences he faced. Thereafter, on May 19, 2003, Fretas filed his second application for naturalization. Then, on May 27, 2003, Fretas filed a motion to terminate removal proceedings, which was granted by the IJ on May 25, 2004, over the objection of ICE. The IJ found significant humanitarian factors; ruled Fretas prima facie eligible for naturalization; and terminated the removal proceedings without prejudice to reinstatement of removal proceedings if naturalization is ultimately denied. Fretas was interviewed on his second application for naturalization on June 25, 2004. Further, DHS appealed the decision of the IJ; and, on January 13, 2006, the Board of Immigration Appeals ("BIA") reversed.

The BIA ruled the IJ was without authority; and under *In re Cruz*, 15 I. & N. Dec. 236 (BIA 1975), a prima facie finding of eligibility for naturalization could only issue from DHS or

---

[1] Effective March 1, 2003, the INS ceased to exist as a separate agency within the Department of Justice. The Executive Office of Immigration Review (which includes the immigration courts and the Board of Immigration Appeals) remains within the Department of Justice. The enforcement functions of the former INS were transferred to the United States Immigration and Customs Enforcement ("ICE"); the service functions were transferred to the United States Citizenship and Immigration Services ("USCIS"); and the border functions were transferred to the United States Customs and Border Protection, all within the Department of Homeland Security ("DHS").

by declaration of a court.

Alain Fretas and his wife, Leda Fretas, filed a Complaint for Declaratory and Injunctive Relief on June 15, 2006.  (ECF DKT #1).  The Complaint asserts Fretas has exhausted his administrative remedies and the Board's order is not a final order reviewable by the Sixth Circuit Court of Appeals.  At ¶ 17, the Complaint recites: "The failure of Defendant Hansen to make a finding of prima facie eligibility after the matter has been pending for almost two years since the naturalization interview of Mr. Fretas is 'agency action unlawfully withheld or unreasonably delayed.'" Fretas asks the Court for the following relief:

"A.  That the Court declare that Defendant Hansen has unreasonably delayed making a determination that Plaintiff Alain Fretas is prima facie eligible for naturalization but for the pending removal proceeding.
B.  That the Court declare that Plaintiff Alain Fretas is prima facie eligible for naturalization but for the pending removal proceeding.
C.  That the Court award Plaintiffs the costs of this action including attorneys' fees.
D.  That the Court grant Plaintiffs such other relief as may be just."

On August 21, 2006, during the pendency of this case, the USCIS denied Plaintiff's second application for naturalization because he was in removal proceedings.  On September 18, 2006, Fretas appealed the denial and filed a request for hearing.  By letter dated November 2, 2006, the USCIS advised Fretas the Agency does not have jurisdiction over his naturalization case due to the fact he is in removal proceedings.  In addition, the USCIS advised that should formal removal proceedings be terminated, it remained the Agency's position that Fretas is not prima facie eligible for naturalization.  The USCIS concluded Fretas had given false or misleading information about his criminal history at naturalization interviews.

According to Section 316(a) of the Immigration and Nationality Act, no person is eligible to naturalize unless, during the five-year period immediately preceding filing for naturalization,

the person "... has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

Moreover, under Title 8, Code of Federal Regulations, Part 316.10(b)(2), "[a]n applicant shall be found to lack good moral character if during the statutory period the applicant ... has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit..."

The USCIS determined Fretas, on more than one occasion, provided false or misleading information about his criminal background and convictions in hopes of obtaining various benefits under the Immigration and Nationality Act. Therefore, in the opinion of the USCIS, he lacks the good moral character required to become a citizen. (ECF DKT #9, Exhibit N).

On February 20, 2007, Plaintiffs moved for leave to file an Amended Complaint. The proposed Amended Complaint asks this Court to declare that Defendants are barred by judicial estoppel from using contradictory interpretations of the *In re Cruz* decision to avoid the IJ's and this Court's finding of prima facie eligibility for naturalization; to issue a writ of mandamus to the Attorney General, ordering him to perform his legal duty and prevent different parts of the Department of Justice from adopting conflicting view of *Cruz*; and to join the BIA and issue a writ of mandamus, requiring the BIA vacate its January 13, 2006 Order reversing the IJ's termination of Fretas' removal proceedings.

Defendants have moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and have opposed Plaintiffs' request for leave to amend their Complaint.

## II. LAW AND ANALYSIS

When challenged on a motion to dismiss, it is Plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Such a challenge can be a (1) facial attack or a (2) factual attack. See, e.g., *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

A facial attack challenges the sufficiency of the pleading; and the Court is required to accept as true all of the material allegations in the complaint and construe them in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598.

Where the challenge is to "the actual existence of the Court's jurisdiction over the matter," the movant is making a 12(b)(1) factual attack. *Walters v. Leavitt*, 376 F. Supp. 2d 746, 752 (E.D. Mich. 2005); citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974). In resolving a factual attack under Rule 12(b)(1), "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdiction claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Thus, a court may examine evidence outside of the pleadings in order to determine whether it has jurisdiction to hear a certain case. See *Dalton v. Jefferson Smurfit Corp., et al.*, 979 F. Supp. 1187, 1193 (S.D. Ohio 1997). "[A] court may consider any evidence properly before it when a defendant factually attacks subject matter jurisdiction under Rule 12(b)(1)." *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999).

In his original Complaint, Fretas alleges this Court has jurisdiction under 8 U.S.C. § 1447 to review the failure of Director Hansen to issue the determination of prima facie

eligibility during the two years following the June 25, 2004 naturalization interview.  Also, Fretas alleges this Court has jurisdiction to find him prima facie eligible for naturalization but for his pending removal proceeding.  *Zayed v. U.S.*, 368 F.3d 902 (6th Cir. 2004); *Gatcliffe v. Reno*, 23 F. Supp. 2d 581 (D.V.I. 1998).

Pursuant to 8 U.S.C. § 1447(b): "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."[2]

Further, 8 U.S.C. § 1429 provides in pertinent part: "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest ..."

It is undisputed that Fretas is currently in removal proceedings.  Consequently, this Court cannot grant him the relief he seeks in this action.

While jurisdiction is bestowed upon the district courts pursuant to 8 U.S.C. § 1447(b) when the Attorney General fails to act after completion of the examination process, the jurisdiction is subject to limitation.  As the Sixth Circuit noted in *Zayed*, 368 F.3d at 906: "The effect of § 1429, in our view, is to limit the scope of the court's review and circumscribe the availability of effective remedies, but not to oust the district court of a jurisdiction expressly

---

[2] The Court notes, although not raised by Defendants, that Plaintiff, Alain Fretas, resides outside this district, in Columbus, Ohio.

conferred on it by the very act of Congress that amended § 1429." Under the facts before it, this Court's jurisdiction is limited to a review of the threshold determination as to whether Fretas was in removal proceedings at the time of his Complaint. "Therefore, until the question of deportation is resolved, there is nothing to adjudicate here." *Sweilem v. U.S. Citizenship and Immigration Services*, No. 1:05CV125, 2005 WL 1123582, at *3 (N.D. Ohio May 10, 2005); see also *Berlovan v. Gonzales*, No. 1:07CV39, 2007 WL 1965595 (N.D. Ohio July 3, 2007; re-filed July 12, 2007).

"Section 1429 was designed to end this 'race between the alien to gain citizenship and the Attorney General to deport him.'" *Zayed*, 368 F.3d at 905 (quoting *Shomberg v. United States*, 348 U.S. 540, 544 (1955)). In 1990, when the "sole authority" to naturalize aliens was transferred from the district courts to the Attorney General, the Attorney General also became the entity precluded from acting on naturalization applications during the pendency of removal proceedings under 8 U.S.C. § 1429. "We are aware of no suggestion that Congress intended the priority of removal proceedings over naturalization proceedings to be altered by the 1990 amendments." *Zayed*, 368 F.3d at 905-906. It follows, therefore, that a district court's scope of review can be no greater than the authority of the Attorney General to consider the naturalization application in the first instance. *Zayed*, 368 F.3d at 906; *Apokarina v. Ashcroft*, 232 F. Supp. 2d 414, 416 (E.D. Pa. 2002).

Fretas insists this Court has the authority to determine he is prima facie eligible for naturalization but for his pending removal proceeding, by virtue of the January 13, 2006 BIA decision reinstating the removal proceedings against him, citing to *In re Cruz.* Fretas also directs the Court's attention to the *Gatcliffe* decision out of the district court in the Virgin Islands, which

looked to *In re Cruz* for guidance.  *In re Cruz* is an administrative decision and can neither be persuasive nor instrumental to this Court's analysis of Fretas' Complaint.  As the Seventh Circuit commented: "only Congress – not an administrative agency – can confer jurisdiction on a federal court.  *Cruz* cites no jurisdictional basis for its holding and was decided at a time when district courts had exclusive jurisdiction to grant or deny applications for naturalization."  *Levy v. INS*, 6 F.App'x 331, 332-33 (7th Cir. 2001).  Moreover, this Court cannot follow the lead of the district court in *Gatcliffe,* which declared an applicant to be eligible for naturalization, but for the pendency of removal proceedings.  Rather, this Court joins in the puzzlement expressed by the Sixth Circuit in *Zayed*.  "We are at something of a loss, however, to understand how judicial fiat can overcome the statutory bar of § 1429.  See U.S. Const., art. VI, cl.2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land...").  368 F.3d at 906, n.5.

Plaintiff, Alain Fretas, invokes general sources of jurisdiction which he believes empower the District Court to grant the relief he seeks  — All Writs Act, Declaratory Judgment Act, Federal Administrative Procedure Act, etc.  However, jurisdiction cannot be established under general statutes where a specific grant of authority exists.  A litigant, such as Fretas, cannot be permitted to circumvent the limitations of the applicable specific provision, 8 U.S.C. § 1447(b), by calling upon general grants of jurisdiction.  *Yarovitskiy v. Hansen*, No. 1:07CV1174, 2007 WL 2301172 at *4 (N.D. Ohio August 8, 2007) (citing *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 444-45 (E.D. Va. 2205) and *Lahrar v. USCIS*, 485 F. Supp. 2d 705 (E.D. Va. 2007)).

### III. CONCLUSION

For all these reasons, the Court finds it lacks jurisdiction to grant the relief requested and

dismissal of the Complaint is appropriate. Fretas will have an opportunity at the hearing before the immigration judge to present any matters in mitigation and against removal. In view of this decision, the Court will not inquire into the merits of the alternative motion for summary judgment.

Defendants point out, and the Court agrees, that Plaintiff, Leda Fretas, has not pled any cause of action. Since Plaintiffs never addressed this pleading deficiency, Leda Fretas is dismissed as a party plaintiff.

Further, the Court denies Plaintiff's Motion for Leave to File First Amended Complaint on the basis of futility. The proposed allegations do not alter the authority the Court possesses in this matter. Mandamus is an extraordinary writ; and Fretas has not established a clear right to mandamus relief. In addition, Fretas never countered Defendants' argument that the BIA is immune from suit; thus, joinder of the BIA as a party is not possible.

**IT IS SO ORDERED.**

**DATE: September 23, 2008_____**

**S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**